84 So.2d 438

SCHWARTZ SUPPLY COMPANY, Inc., et al.

v.

Charles ZIMMERMAN.

No. 42086.

Dec. 12, 1955.

Carl A. Conrad, Robert J. Conrad, Milling, Saal, Saunders, Benson and Woodward, James J. Morrison, Harold J. Neubauer, Gerald S. Quinlan, Rudolph R. Schoemann, Edward F. Wegmann, Wisdom, Stone, Pigmann & Benjamin, New Orleans, for plaintiffs-appellants.

Cahn, Provensal & Faris, Robert R. Ramos, Leon A. Pradel, New Orleans, for intervenors and appellants.

Porteous & Johnson; Parnell J. Hyland, New Orleans, for defendant-appellee.

MOISE, Justice.

The plaintiffs and appellants have taken an appeal to this Court from a judgment of the district court declaring that they had not timely recorded their alleged liens and privileges on the residence owned by Charles Zimmerman, located in the City of New Orleans. A mere reading of the chronological listing of facts makes manifest the correctness of the ruling of the trial judge.

On June 3, 1953, a building contract was entered into between Charles Zimmerman and Robert Ryan, contractor. The object of the contract was the construction of a home. This contract was recorded two days thereafter in the Mortgage Office for the Parish of Orleans on June 5, 1953.

The contractor gave no surety bond, and it was not until the home building had advanced to the last stages that Zimmerman was apprised of this fact. Ryan, in carrying out the contractual obligation which he had undertaken, contracted with the plaintiffs appellants for the purchase of necessary building materials and the furnishing of labor. A contract existed between the material men and Ryan, but no contract was entered into between the furnishers of material and labormen and the owner of the building.

The construction progressed for three or four months and,—according to the preponderance of the record evidence shown with a reasonable certainty—was ready for occupancy and was accepted in fact on September 28, 1953.

On September 29, 1953, the acceptance was duly recorded in the Mortgage Office for the Parish of Orleans. Between September 29, 1953 and November 2, 1953—a period of more than thirty days—no liens or privileges were recorded against the construction. On November 3, 1953, the owner and contractor had the cancellation of the building contract recorded in the Mortgage Office. During November and December, 1953, plaintiffs recorded liens and privileges against the property for unpaid labor and materials furnished. The contractor had become a fugitive from justice.

Appellants urge that the acceptance of the building contract was premature. They contend that LSA–Revised Statutes 9:4812, which allows 60 days for the recordation of liens from the last delivery of materials or performance of services, is applicable to the present controversy.

The record, beyond a peradventure of a doubt, shows that when Mr. Zimmerman accepted his residence the building was complete, there being only some minor services to be performed after occupancy. These services included turning on the heating system, gas and stove connections, a shower rod installation and a floor re-sanding under the guarantee of the contract. None of these services had anything to do with the basic construction of the residence. Hortman-Salmen Co., Inc., v. White, 168 La. 1067, 123 So. 715.

Proof certain is made by the testimony of Mr. I. H. Bateman, president of the Investors Homestead, to the effect that when he inspected the building for the purpose of a $6,000 loan on September 27, 1953, it was complete. Mr. Irwin Gautier, appraiser for the Central Appraisal Bureau, testified that the house was complete on September 28, 1953. The contractor's foremen testified that the house was complete for the time of public inspection, even though there were last minutes jobs to be done. The defendant, his son and his brother-in-law all testified that the house was complete when the Zimmerman family moved in on September 28th and 29th, 1953.

LSA–Revised Statute 9:4812, on which plaintiffs rely, reads in part:

"When the owner, or his authorized agent, undertakes the work of construction, improvement, repair, erection, or reconstruction, for the account of the owner, *for which no contract has been entered into, or when a contract has been entered into but has not been recorded, as and when required,* then any person furnishing service or material or performing any labor on the said building or other work may record in the office of the clerk of court or recorder of mortgages in the parish in which the said work is being done or has been done, a copy of his estimate or an affidavit of his claim or any other writing evidencing same, which recordation, if done within sixty days after the date of the last delivery of all material upon the said property or the last performance of all services or labor upon the same, by the said furnisher of material or the said laborer, shall create a privilege upon the building or other structure and upon the land upon which it is situated, in favor of any such person who shall have performed service or labor or delivered material in connection with the said work or improvement, as his interest may appear. * * *" (Italics ours.)

The very language of the above statute is proof certain that it does not apply in the instant case. Here, at the expense of repetition, we again say that the defendant had a written recorded contract and an acceptance of September 28, 1953, which acceptance was recorded on September 29, 1953. There was a compliance with the exactions of the law.

LSA–Revised Statute 9:4801 provides:

"Every contractor, sub-contractor * * * or furnisher of material, machinery, or fixtures, who performs work or furnishes material for the erection, construction, * * * of immovable property, * * * with the consent or at the request of the owner thereof, or his authorized agent or representative, or of any person with whom the owner has contracted for such work, has a privilege upon the land and improvements on which the work or labor has been done, or the materials, machinery or fixtures furnished, for the payment in principal and interest of the work or labor performed, or materials, machinery or fixtures furnished, and for the cost of recording such privilege."

LSA–Revised Statute 9:4802 reads:

"Every contract hereafter entered into for the repair, * * * construction, * * * by any undertaker, general contractor, * * * or other person undertaking such general contract with the owner * * * *shall be reduced to writing, signed by the parties thereto by an authentic act, or*

*under private signature, and shall be recorded in the office of the clerk of court or the recorder of mortgages of the parish wherein said work is to be executed, before the date fixed on which the work is to commence and not more than thirty days after the date of the said contract.* Such recordation shall preserve the privileges on the building or other work of improvement, and on the land on which it is situated, in favor of every undertaker, architect, * * * and all sub-contractors, * * * as their interest may arise. The owner of such work shall require of such undertaker, contractor, * * *, a bond with surety * * *. Every person having a claim against the undertaker, general contractor, sub-contractor, * * * shall serve upon the owner a sworn detailed statement of his claim, which service shall be effected by registered mail * * * and shall record a sworn statement showing the total amount of his claim in the office of the clerk of court or recorder of mortgages for the parish in which the said work has been done, *which service and recordation shall be made not later than thirty days after registry in the office of the clerk of court or recorder of mortgages of said parish of notice of acceptance by the owner of the said work,* or notice by the owner of the default of the said undertaker, con-

tractor, * * *. *The delay within which to file privileges and claims shall not begin to run until the date of such registry of acceptance by the said owner, or registry of notice of default.* If, at the expiration of the said period of thirty days, there are no such claims recorded, the clerk of court or recorder of mortgages, shall, upon the written demand of the owner or other party interested therein, cancel and erase from the books of his office the inscription of said contract, except as to the contractor or other person undertaking the work at the request of the owner or his authorized agent or representatives, and all liability of the said owner for labor and material employed in the said work shall cease, and his property shall not thereafter be subject to privileges growing out of claims arising under the said building contract, except that of the contractor or other person undertaking the work, as hereinafter set forth." (Italics ours.)

LSA–Revised Statute 9:4803 sets forth the obligations of the surety.

It is provided in LSA–Revised Statute 9:4806:

"If the bond is found to be insufficient in amount or not to have a proper and solvent surety, or if no bond has been furnished or recorded within the time hereinbefore provided, but the

contract has been timely recorded, the owner shall be personally liable to sub-contractors, * * * workmen, laborers, mechanics, furnishers of material, or any other persons furnishing labor, skill, or material on the said work who recorded and served their claims as provided in R.S. 9:4803, to the same extent as is the contractor, and the said personal liability as well as the privilege hereinabove provided for, shall remain in full force and effect for one year from the date of filing of such claim, *as provided in R.S. 9:4802* unless interrupted by judicial proceedings." (Italics ours.)

■ The rule provided by Article 17 of the LSA–Civil Code is: That all "Laws in pari materia * * * must be construed with reference to each other." Smith v. Town of Vinton, 209 La. 587, 25 So.2d 237; City of New Orleans v. Leeco, 226 La. 335, 76 So.2d 387; LSA–Civil Code, Article 18. The Private Works Act, LSA–R.S. 9:4801 et seq., is plain when we construe its sections in the relation of one to the other. See Glassell, Taylor & Robinson v. John W. Harris Associates, Inc., 209 La. 957, 26 So.2d 1.

■ We do not have to delve along the shelves of antiquity to find authority for the ruling of the trial judge. He has correctly stated the following in his reasons for judgment:

"* * * the claims of none of the plaintiffs were timely recorded under the applicable provisions of the law ([LSA–]R.S. 9:4802 and [LSA–] R.S. 9:4806), and * * * consequently none of the claimants has either a lien on the building or a personal claim against the owner thereof, being of the further opinion that the provisions of [LSA–] R.S. 9:4812 have no application whatever to his case, and being of the further opinion that nothing heard on the merits serves to enlarge the pleadings to the extent necessary to remove the bar of the Exception of No Cause of Action, * * *."

We fail to see any error on facts or any error on the trial judge's conclusions of law. Plaintiffs did not record their claims within thirty days after the acceptance of the building was filed in the Office of the Recorder of Mortgages for the Parish of Orleans. LSA–R.S. 9:4802. Therefore, the judgment must be affirmed.

Judgment affirmed.